United States District Court
Southern District of Texas
FILED

FEB 0 2 2024

Nathan Ochsner, Clerk

United States District Court
Southern District of Texas

**ENTERED**
February 02, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | | |
|---|---|---|
| **PAUL ALEXANDER SERRANO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 7:22-CV-347** |
| | § | |
| **EDDIE GARZA,** *et al.,* | § | |
| | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION

Plaintiff PAUL ALEXANDER SERRANO, appearing pro se and in forma pauperis, brings this civil action against several local entities and officials for allegedly violating his constitutional rights while he was a pre-trial detainee at the Hidalgo County Adult Detention Center (the "Detention Center"). According to Plaintiff, two corrections officers at the Detention Center, a David Flores, First Lieutenant ("Lt. Flores"), and a Lieutenant Salinas ("Lt. Salinas"), destroyed several of Plaintiff's religious items, verbally disparaged him, and threatened to put him in solitary confinement because he had previously made written grievances about other corrections officers. (Dkt. No. 42 at 5; Dkt. No. 50 at 1-2). Plaintiff names as defendants the following: the City of Edinburg Police Department (the "EPD"); J.E. "Eddie" Guerra, Sheriff of Hidalgo County ("Sheriff Guerra"), presumably in his role as the administrator, operator, and supervisor of the Detention Center;[1] an official identified as "Eddie Garza, Director of the Texas DOC" ("Garza"); Ivonne Vasquez, Captain ("Captain Vasquez"), presumably in her role as a corrections officer supervisor at the Detention Center; Lt. Flores; and Lt. Salinas. (Dkt. No. 42 at 2-3, 5; Dkt. No. 50 at 1). His pro se pleadings liberally construed, *see Coleman v. United States*, 912 F.3d 824, 828

---

[1] Tex. Loc. Gov't Code §§ 351.034, 351.035, 351.041.

(5th Cir. 2019), Plaintiff seeks redress under 42 U.S.C. § 1983 in the form of money damages for the violation of his right to the free exercise of religion under the First Amendment, his right against retaliation for the exercise of protected First Amendment activity, and his right against cruel and unusual punishment under the Eighth Amendment. (Dkt. No. 42 at 5).

Considering that Plaintiff is a prisoner who seeks redress from a governmental entity, or officer or employee of a governmental entity, the amended complaint is subject to screening under 28 U.S.C. §§ 1915 and 1915A of the Prison Litigation Reform Act (the "PLRA"), which contemplate dismissal of a complaint, or any portion thereof, that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

This case was referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). After review of the record and the relevant law, the Magistrate Judge RECOMMENDS that the entirety of Plaintiff's claims against the EPD, Sheriff Guerra, Garza, and Captain Vasquez be DISMISSED for the failure to state a claim, and that Plaintiff's Eighth Amendment claims against Lt. Flores and Lt. Salinas also be DISMISSED for the failure to state a claim. The Magistrate Judge does not make any recommendation as to the dismissal of Plaintiff's First Amendment free exercise and retaliation claims against Lt. Flores and Lt. Salinas. Issued contemporaneously with this report and recommendation is an advisory concerning the requirement that Plaintiff effect service of process on Lt. Flores and Lt. Salinas.

## I. BACKGROUND

When he first filed his complaint in September 2022, Plaintiff was being held at the Detention Center in pre-trial custody on charges related to deadly conduct for the discharge of a firearm.[2] (Dkt. No. 1).

---

[2] Plaintiff's criminal case records can be accessed by using his name to query the Hidalgo County Records Inquiry page at https://pa.co.hidalgo.tx.us/default.aspx. Upon his conviction in March 2023, Plaintiff

Plaintiff applied for and was granted leave to proceed in forma pauperis. (Dkt. Nos. 5, 10, 12, 28).

Because Plaintiff went on to file several handwritten letters that seemingly referred to different defendants and claims, the Magistrate Judge ordered that he submit an amended complaint on a standardized prisoner complaint form. (Dkt. Nos. 7, 13, 39).

Plaintiff submitted an amended complaint as ordered. (Dkt. No. 42).

Upon review of the amended complaint, the Magistrate Judge ordered Plaintiff to provide a more definite statement in the form of written responses to questions as to the facts underlying his claims.[3] (Dkt. No. 46).

Plaintiff submitted responses to the questionnaire as ordered. (Dkt. No. 50).

## II. FACTUAL ALLEGATIONS

Plaintiff alleges through the amended complaint as follows:

[On September 9, 2022,] I was pulled out of my unit, which was Foxtrot 4A, by Lt. Flores and Lt. Salinas, when they took me into a room and started to interrogate, saying, "Are you stupid to think that you can file a grievance against my officers and threaten us with legal actions?  You will not get anything."  From that day forward, they kept destroying my religious items and altar.

(Dkt. No. 42 at 5 (edited for readability)).

Through the order for a more definite statement, Plaintiff was posed questions meant to elicit information relating to matters such as the following: (i) the personal involvement of the officials and officers; (ii) whether Plaintiff intended to sue Lt. Flores and Lt. Salinas (insofar as

---

would later be transferred to the custody of the Texas Department of Criminal Justice, specifically, the McConnell Unit located in Beeville, Texas. (Dkt. No. 41).

[3] A hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) or a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886 (5th Cir. 1976) may be employed to develop the factual and legal bases of a prisoner's claims, *see Wesson v. Oglesby*, 910 F.2d 278, 281 (5th Cir. 1990), which procedures are similar to obtaining a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure, *see Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991).

Plaintiff alleged their personal involvement but had not named them as defendants); (iii) the nature of the religious items at issue and the circumstances behind their alleged destruction; and (iv) how Plaintiff believed the alleged acts of the officers violated his civil rights. (Dkt. No. 46).

Through his more definite statement, Plaintiff explains that "[his] religious affiliation is *Santeria*[,] which is considered *Yoruba* in Africa[,]" and that this affiliation was on record with officials at the Detention Center. (Dkt. No. 50 at 1). Among the items allegedly destroyed were pictures of Yoruba religious figures and a pendant on a gold chain—all handmade in Africa. (*Id.*). The pendant was handed down to Plaintiff by his grandfather. (*Id.*). Also destroyed were prayers handwritten by Plaintiff's grandfather before his passing. (*Id.* at 2). Plaintiff maintains that, due to mental illness, he is unable to recall the text of the prayers. (*Id.*). In terms of the disposition of the items, Plaintiff alleges that the pictures were "ripped up[,] some thrown away[,]" and that the pendant was "taken" along with the gold chain. (*Id.* at 1). Lt. Flores and Lt. Salinas are alleged to have told Plaintiff that the items should not have been on his bunk. (*Id.*). No items taken were returned to Plaintiff. (*Id.*).

Plaintiff asserts that he wrote letters to Sheriff Guerra, Garza, and Captain Vasquez for help after he was wronged by Lt. Flores and Lt. Salinas. (*Id.*). According to Plaintiff, they all turned a "blind eye" to his situation given that Lt. Flores and Lt. Salinas were associates of Sheriff Guerra and Garza and outranked Captain Vasquez. (*Id.*). Plaintiff otherwise confirms that he is suing Lt. Flores and Lt. Salinas for their actions. (*Id.*).

Plaintiff claims that his First Amendment right to the free exercise of religion was violated insofar as destruction of his religious items hampered his ability to practice and express his religious beliefs. (*Id.* at 2).

Plaintiff also generally claims that Lt. Flores and Lt. Salinas took the acts they did in retaliation for Plaintiff's exercise of his First Amendment right to express grievances against the Detention Center and its officers. (*Id.* at 1-2).

In terms of the Eighth Amendment, Plaintiff claims that his right against cruel and unusual punishment was violated when he was taken by Lt. Flores and Lt. Salinas from his unit to a "multipurpose room," where he was interrogated about his grievances and "verbally abused." (*Id.*). Plaintiff alleges, for purposes of this claim, that Lt. Flores called him a "piece of shit" and said that Plaintiff would "never amount to anything thinking [he] [could] sue the [Detention Center] . . . ." (*Id.* at 1). Plaintiff also adds the detail that Lt. Flores and Lt. Salinas threatened to put him in solitary confinement. (*Id.* at 2).

### III. LEGAL STANDARDS

#### A. Screening Under §§ 1915 and 1915A

Section 1915(e)(2)(B) of the PLRA imposes a screening responsibility on the district court whenever a plaintiff is granted in forma pauperis status. *Omran v. Wyche*, 745 F. App'x 225, 226 (5th Cir. 2018) (per curiam); *Womack v. Teleplan*, 2003 WL 21289652, at *1 (N.D. Tex. May 29, 2003) (citing 28 U.S.C. § 1915(e)(2)(B)). Such screening applies to prisoners and non-prisoners alike. *Womack*, 2003 WL 21289652, at *1 n.1 (citing *Newsome v. EEOC*, 301 F.3d 227, 231-33 (5th Cir. 2002) (per curiam)). Section 1915A(a) of the PLRA mandates similar screening of any civil complaint by a prisoner against a governmental entity or its officers and employees. 28 U.S.C. § 1915A(a). Pursuant to such screening under the PLRA, courts must identify and dismiss any claims that are: (i) frivolous or malicious; (ii) fail to state a claim on which relief may be granted; or (iii) seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

A dismissal under the PLRA for the failure to state a claim is governed by the same standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See DeMarco v. Davis*, 914 F.3d 383, 386 (5th Cir. 2019).  When considering whether the plaintiff has adequately stated a claim on which relief can be granted, the court examines whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (quotations omitted).  The court construes the complaint liberally in favor of the plaintiff, takes all facts pleaded in the complaint as true, and considers whether, with every doubt resolved on the plaintiff's behalf, the complaint states any valid claim for relief. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (quotations omitted).

Even under this lenient standard, a plaintiff must allege more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  That said, no matter how well-pleaded the factual allegations, they must reveal an entitlement to relief under a valid legal theory. *See McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997).

## B. Liability Under § 1983

The § 1983 statute "creates a private right of action for redressing violations of federal law by those acting under color of state law." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).  The violation of law must involve the deprivation of rights or privileges secured by federal statute or constitutional norms. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  To act under the color of law means to act under the "pretense" of law. *Screws v. United States*, 325 U.S. 91, 111 (1945).

A government official may be subject to suit under § 1983 based on two capacities, their *individual* capacity as distinguished from their *official* capacity. *Sanchez v. Griffis*, 569 F. Supp. 3d 496, 514-15 (W.D. Tex. 2021) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)), *aff'd*, 2023 WL 7984732 (5th Cir. 2023) (per curiam). An individual capacity suit seeks to impose personal liability on an official for their personal involvement in the claimed deprivation of rights. *Id.* (citing *Graham*, 473 U.S. at 165-66); *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). An official capacity suit, on the other hand, "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent[,]" *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978), such that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity[,]" *Graham*, 473 U.S. at 166.

Qualifying as entities liable to suit under 1983 are municipalities, that is, local governments below the state level, *Monell*, 436 U.S. at 663, 690, which generally include Texas county governments, *Sanchez*, 569 F. Supp. 3d at 515 n.5 (W.D. Tex. 2021) (citing *Prince v. Curry*, 423 F. App'x 447, 450 n.3 (5th Cir. 2011) (per curiam)).

However, it is well established that municipal liability cannot be based on the doctrine of respondeat superior. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur[,]" such that "isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* at 578. In other words, there must be both municipal culpability and causation. *Id.* at 578 n.17. The official action may come by way of a policy or custom attributable to the official policymaker. *Id.* at 578. Municipal liability thus consists of three elements: (i) an official policy or custom; (ii) a policymaker who can be charged with actual or constructive knowledge of the

policy or custom; and (iii) a violation of constitutional rights whose "moving force" is the policy or custom. *Cano v. Harlandale Indep. Sch. Dist.*, 2020 WL 7385843, at *5 (W.D. Tex. Dec. 16, 2020) (citing *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015)).

An official policy includes the following: (i) a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; and (ii) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Bennet v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam).

"Though [a plaintiff] need not offer proof of [their] allegations at [the pleadings] stage, [they] must still plead facts that plausibly support each element of § 1983 municipal liability[.]" *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678). Where a plaintiff fails to offer even a boilerplate allegation of a policy or custom, their claim is subject to dismissal. *See Minor v. Miss. Dep't of Pub. Safety*, 2020 WL 1877798, at *2 (N.D. Miss. April 15, 2020). Insofar as one is alleged, "[t]he description of [that] policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997).

## IV. ANALYSIS

Discussed in turn is the dismissal of the entirety of Plaintiff's claims against the EPD, Sheriff Guerra, Garza, and Captain Vasquez and Plaintiff's Eighth Amendment claims against Lt. Flores and Lt. Salinas.

## A. The EPD

As a threshold matter, Plaintiff fails to draw—and the Magistrate Judge is otherwise unable to identify—any connection between the EPD and the claimed constitutional deprivations. Plaintiff does not allege that the EPD operates the Detention Center or employs any of the defendant officials or custodial officers. According to the Texas Local Government Code, county jails are generally provided for by the commissioners court of a county and administered, operated, and supervised by the sheriff of the county.[4]  Tex. Loc. Gov't Code §§ 351.001, 351.034, 351.035, 351.041; *Dugas v. Jefferson Cnty.*, 911 F. Supp. 251, 254 (E.D. Tex. 1995) (citing *Balli v. Haynes*, 804 F.2d 306, 308 (5th Cir. 1986)) ("The running of a county jail is generally considered a county function, notwithstanding some degree of state involvement.").

Regardless, the EPD lacks the requisite capacity to be sued. *See* Fed. R. Civ. P. 17(b). While a municipality may qualify as a person subject to suit for purposes of § 1983, a police department is not generally considered its own jural entity having an independent existence from a municipality. *Darby v. Pasadena Police Dep't.*, 939 F.2d 311, 313-14 (5th Cir. 1991).  Federal courts in Texas have uniformly held that entities without a separate jural existence, like city police departments, cannot be subject to suit.[5] *Jeanty v. TXFM, Inc.*, 2020 WL 5797727, at *3 (E.D. Tex. Aug. 12, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 5651636 (E.D. Tex. Sept. 23, 2020).

As such, Plaintiff fails to state a claim against the EPD.

---

[4] The matter of Hidalgo County's municipal liability (or lack thereof) is addressed below in the context of Plaintiff's claims against Sheriff Guerra.

[5] Nor for that matter would the Hidalgo County Sheriff's Department have the requisite capacity. *See Villareal v. Hidalgo Cnty.*, 2022 WL 824851, at *3 (S.D. Tex. Mar. 18, 2022).

## B. Sheriff Guerra

Any claims against Sheriff Guerra in his individual capacity should be dismissed because Plaintiff fails to allege facts of Sheriff Guerra's personal involvement in the claimed deprivations of rights. The best Plaintiff does is to allege that Sheriff Guerra ignored his grievance letter against Lt. Flores and Lt. Salinas. However, neither the receipt of letters or grievances, nor the subsequent failure to investigate and take corrective action in response, is sufficient to impute personal involvement. *See Kindred v. Lumpkin*, 2021 WL 3617847, at *4 (E.D. Tex. June 3, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 3185279 (E.D. Tex. July 28, 2021); *see also Emmons v. Painter*, 2021 WL 2832977, at *9-10 (W.D. Tex. May 23, 2021) (collecting cases). Indeed, such circumstances fail to establish the required causal connection between the acts or omissions of the defendant and the claimed violation of rights. *See Cervantes v. Sanders*, 1998 WL 401628, at *2 (N.D. Tex. July 14, 1998) (citing *Reimer v. Smith*, 663 F.2d 1316, 1323 (5th Cir. 1981)).

As for any official capacity claims against Sheriff Guerra, these are properly understood as claims against Hidalgo County. *See Gibson v. Skinner*, 2023 WL 5810496, at *9 (E.D. Tex. Aug. 3, 2023), *report and recommendation adopted*, 2023 WL 5807836 (E.D. Tex. Sept. 7, 2023). When supervisory officials are involved in a deprivation of rights, those supervisors—or the municipalities they represent—may be held liable under theories related to the failure-to-train or the failure-to-supervise. *See Snyder v. Trepagnier*, 142 F.3d 791, 796-98 (5th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)); *see also Johnson v. Johnson*, 2012 WL 1038787, at *2 (S.D. Miss. Mar. 7, 2012), *report and recommendation adopted*, 2012 WL 1038776 (S.D. Miss. Mar. 29, 2012). But again, the pleadings here do not even begin to hint at any unconstitutional policies or customs, and supervisory officials may not otherwise be held liable

under § 1983 for the acts or omissions of subordinates based on a theory of vicarious liability. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).

As such, Plaintiff fails to state a claim against Sheriff Guerra.[6]

## C. Garza

Plaintiff's claims against Garza fail for reasons like those against the EPD and Sheriff Guerra.  Garza is alleged by Plaintiff to occupy some directorial position with the Texas Department of Criminal Justice (the "TDCJ"), a state agency responsible for operating the Texas prison system, Tex. Gov't Code § 493.004, whereas the Detention Center is administered and operated at the county level.  Plaintiff simply fails to identify any connection between the TDCJ and the claimed constitutional violations at issue, which ostensibly occurred during Plaintiff's pre-trial detention, or before his transfer to TDCJ custody.  Moreover, for purposes of the respective matters of individual and official liability, Plaintiff fails to allege any facts that Garza was personally involved in any constitutional deprivations—regardless of whether Garza was informed of Plaintiff's situation via letter—or that Garza promulgated unconstitutional policies.[7]

As such, Plaintiff fails to state a claim against Garza.

## D. Captain Vasquez

In terms of the individual liability of Captain Vasquez, the pleadings make clear that Plaintiff merely wrote her a letter for help, which falls short of an allegation that Captain Vasquez was personally involved in any rights violations.  To the extent that Plaintiff is suing Captain Vasquez in her official capacity, this would be understood as a suit against Hidalgo County.  Again,

---

[6] For avoidance of doubt, Plaintiff also fails to state a claim against Hidalgo County.

[7] As a state official sued in his official capacity, Garza would also enjoy state sovereign immunity over a claim for § 1983 money damages. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

Plaintiff fails to allege that Hidalgo County promulgated unconstitutional policies or customs. As such, Plaintiff fails to state a claim against Captain Vasquez.

### E. Lt. Flores and Lt. Salinas

Finally, for purposes of his Eighth Amendment claim of cruel and unusual punishment, Plaintiff alleges that Lt. Flores and Lt. Salinas interrogated him, subjected him to verbal abuse, including name-calling, and threatened him with solitary confinement. Even if true, mere verbal abuse, including name-calling and threatening language, by a custodial officer does not give rise to a constitutional violation. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *see also Larson v. Westbrook*, 799 F. App'x 263, 264 (5th Cir. 2020) (per curiam); *LaCour v. Jail of Beauregard Parish*, 2022 WL 4001040, at *4 (W.D. La. July 26, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 3998586 (W.D. La. Aug. 31, 2022); *McBride v. Ausbie*, 2014 WL 5032720, at *3 (N.D. Tex. Oct. 8, 2014) (collecting cases). Along that vein, nor does threatening to place an inmate in solitary confinement. *See Whelen v. Penouilh*, 2009 WL 86667, at *13 (E.D. La. Jan. 13, 2009) (collecting cases); *see also Hunter v. Unknown Orsborne*, 2023 WL 6386826, at *6-7 (W.D. Mich. Oct. 2, 2023).  As such, Plaintiff fails to state Eighth Amendment claims against Lt. Flores and Lt. Salinas.

### V. CONCLUSION

For these reasons, the Magistrate Judge RECOMMENDS that the entirety of Plaintiff's claims against the EPD, Sheriff Guerra, Garza, and Captain Vasquez be DISMISSED for the failure to state a claim, and that Plaintiff's Eighth Amendment claims against Lt. Flores and Lt. Salinas also be DISMISSED for the failure to state a claim.

### *Notice to the Parties*

Within fourteen (14) days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Failure to file written objections within fourteen (14) days after service shall bar an aggrieved party from de novo review by the District Court on an issue covered in this report and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

### *Directive to Clerk of Court*

The Clerk of Court is DIRECTED to forward a copy of this document to Plaintiff by any receipted means.

DONE at McAllen, Texas, this 2nd day of February 2024.

J. SCOTT HACKER
United States Magistrate Judge